UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MOHAMMED ISLAM, | : | |
| Plaintiff, | : | Hon. Dennis M. Cavanaugh |
| v. | : | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | : | Civil Action No. 05-3773 |
| Defendant. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.

      This matter comes before the Court upon Plaintiff Mohammed Islam's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("Commissioner") final decision denying Plaintiff's request for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure. The Court has jurisdiction to review this matter pursuant to 42 U.S.C. §405(g) and 1383(c)(3). After reviewing all of the submissions by both parties and for the reasons stated below, this Court finds that the Commissioner's decision is based on a complete analysis supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

**I. BACKGROUND**

1

**A. Procedural History**

Plaintiff filed an application for DIB on January 17, 2001. (R. 91-93). This application was denied initially and on reconsideration. (R. 58-62 and 64-66). Pursuant to Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on April 4, 2003. (R. 15). On September 26, 2003, the ALJ issued a partially favorable decision in which he found Plaintiff to have been since disabled since September 15, 2003, the date of his fiftieth birthday. (R. 12-21). Plaintiff's request for review by the Appeals Council was denied on June 17, 2005. (R. 5-7). Plaintiff filed an appeal before this Court on July 29, 2005 for review of the final decision of the Commissioner.

**B. Factual History**

Plaintiff was born in Bangladesh on September 15, 1953. (R. 29). He emigrated to the United States in 1987, and has since become a United States citizen. (Id.) Plaintiff has a tenth grade education and currently lives with his wife and children. (R. 30; Pl. Br. 9.).

Plaintiff was employed as a machine operator in a textile company for eleven years and three months until the factory was shut down in 2000. (R. 32). He received unemployment benefits for approximately one year. (R. 35). Plaintiff also testified that he operated a snack store with some friends for about two or three years, working about three days a year. (R. 324).

Plaintiff complained that he was unable to work because of medical conditions including heart and chest problems,[1] orthopedic complaints involving his shoulder, elbow, and back,

---

[1]Plaintiff represents that he had his first heart attack in 1997. Since then, he claims to have had at least sixteen separate medical procedures and studies performed on his heart. (Pl. Reply 2). Plaintiff testified that he has had a total of four heart surgeries. (R. 40).

diabetes,[2] asthma,[3] mental conditions,[4] and fatigue.[5]  At the administrative law hearing, Plaintiff testified that he experiences varying degrees of chest pain as a result of a 1999 heart attack.  (R. 35-36).  Plaintiff takes medicine that relieves the pain after twenty or twenty-five minutes.  (R. 37).  Plaintiff provided a list of at least eleven medications that he takes for his various ailments, while noting that they did not completely relieve him of his discomfort.  (R. 42-43).  Plaintiff complains that he cannot sleep at all.  (R. 45).  Plaintiff experiences pain in his left hand, but not his right hand.  (Id.)  He does not use a cane or brace, but sometimes shakes and needs to hold onto something for support.  (R. 43-44).  Plaintiff testified that he could not fully flex his fingers into his palm, but proved was able to do so upon being coaxed by doctors.  (R. 166).  Lastly, Plaintiff complains of lateral pain with minimal posterior pain and cannot lift his shoulder.  (Id.)

*A. Plaintiff's Chest Ailments*

Plaintiff had a heart attack in 1999.  (R. 35).  He underwent a balloon angioplasty on April 21, 1999, and Dr. Ashoke Agarwal recommended additional angioplasty and medical therapy.  (R. 231, 233).  On April 16, 2001, Dr. Michael Pollack reviewed Plaintiff's claims for the Division of Disability Determination Services and concluded that Plaintiff's health was fair.  (R. 191).  On that same date, Dr. V. Hiremath, after examining Plaintiff's cardiac and lung functions, concluded that Plaintiff had a normal chest.  (R.192).  Plaintiff underwent an Echo-

---

[2]Plaintiff testified that his diabetes was under control when he took medication. (R. 40). He also testified that the condition made him "uncomfortable" and "weak" when his diuretic went down. (R. 41).

[3]Plaintiff appears to have an inhaler for his asthma. (R. 43). Additionally, once every two or three nights he cannot sleep because he has a breathing attack. (R. 45).

[4]With respect to Plaintiff's mental conditions, Dr. Arthur Rothman indicated on November 1, 2000, that he believed Plaintiff has a "partial permanent disability of 25% for neuropsychiatric reasons." (R. 174).

[5]Plaintiff's diagnoses for diabetes, asthma, fatigue, and mental impairment are not well developed: the record focuses mostly on Plaintiff's chest and orthopedic ailments.

3

Doppler study of his heart on June 5, 2001, which revealed sclerosis in the aortic valve, mild regurgitation in the mitrial valve and tricuspid valve, and mild hypertrophy in the left ventricle with all other interpretations listed as normal. (R. 206). On September 20, 2001, Dr. Michael Steinberg examined Plaintiff and found that he did not have an enlarged heart and that there was no evidence of pulmonary infiltrate. (R. 212). Dr. Argarwal noted that during a April 8, 2002 procedure, Plaintiff went into atrial fibrillation, but does not note any complications pursuant thereto. (Id.) Plaintiff had a third angioplasty in February 2003. (R. 19).

*B. Plaintiff's Orthopedic Ailments*

Dr. Mark Maletsky, an orthopedic surgeon, treated Plaintiff on December 29, 1998, for a work-related accident. (R. 164). In reviewing Plaintiff's past medical history, Dr. Maletsky noted that Plaintiff had fallen and fractured his elbow as a young boy, but it had healed and now functioned well. (Id.) Plaintiff also reported occasional paresthesia in the fingers, caused by a fall in 1990 or 1991 for which he underwent surgery. (Id.) Dr. Maletsky also noted that Plaintiff underwent physical therapy for his elbow, hand, and shoulder, and that his elbow was feeling better and his shoulder was less painful. (Id.)

In March 2000, Dr. Maletsky again examined Plaintiff. He concluded that Plaintiff's complaints were related to the 1998 work-related accident. He opined that Plaintiff had reached maximum medical benefit of treatment. (R. 177). Dr. Maletsky did not believe that there was evidence of any residual permanent disability as a result of this accident, and concluded Plaintiff was capable of employment. (Id.)

On December 7, 2000, Plaintiff was examined by Dr. David Myers, an orthopedic surgeon. Dr. Myers concluded that Plaintiff had a permanent orthopedic disability of 30% and

4

50% in the left arm. (R. 179).

*C. Medical Prognosis*

On November 8, 2001, Dr. Arnouk reviewed Plaintiff's claims for the Division of Disability Determination Services. Dr. Arnouk found that although Plaintiff had multiple complaints relating to his neck and lower back, he did not detect any major abnormalities on examination. (R. 216). Dr. Arnouk further opined: "[t]aking into consideration the previous fall and no record available about any of the x-rays and testing which was done in the past, it is very difficult to determine reliability of complaint...[p]atient is medically stable at the time of this examination." (R. 216). Dr. Arnouk listed Plaintiff's mental condition as fairly stable. (R. 215). Plaintiff had a normal EKG result and an unremarkable chest x-ray. (R. 216). Records indicate that Plaintiff's condition was not considered disabling on May 2, 2001, with additional notations on September 11, 2001 and December 3, 2001, but with no other determinations on these dates. (R. 218-219).

## II. STANDARD OF REVIEW

### A. Standard for Entitlement to Benefits under the Act

A claimant is entitled to benefits under the Act only if he/she satisfies all the relevant requirements of the statute. To establish a valid claim for DIB, the claimant must meet the insured status requirements of 42 U.S.C. §423(c) and the income and resource limitations of 42 U.S.C. §1382(a) and §1382(b), respectively. Finally and essentially, the claimant must demonstrate that he is disabled within the meaning of the Act.

### B. Analysis for Determining Disability

Under the Act, disability is defined as the "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months…" 42 U.S.C. §423(d)(1)(A); see 42 U.S.C. §1382c(a)(3)(A). Physical or mental impairments are those that "result from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3); 42 U.S.C. §1382c(a)(3)(A). Furthermore, an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy…" 42 U.S.C. §423(d)(2)(A).

     Social Security regulations provide a five-step, sequential evaluation procedure to determine whether a claimant is disabled. 20 C.F.R. §404.1520.  First, the Commissioner must inquire whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §404.1520(a)(4)(i).  If the claimant is found to be currently engaged in substantial gainful activity, he will be found not disabled, without consideration of his medical condition. 20 C.F.R. §404.1520(b).  Second, if claimant is not engaged in substantial gainful activity, the Commissioner must decide whether claimant suffers a severe impairment. 20 C.F.R. §404.1520(a)(4)(ii).  If the impairment is not severe, the claimant will be found not disabled. 20 C.F.R. §404.1520(c).  Third, if the claimant is found to be suffering from a severe impairment, the Commissioner must decide whether the impairment is equivalent or exceeds in severity one of the impairments listed in Appendix I of the regulations. 20 C.F.R. §404.1520(a)(4)(iii).  If the

impairment is listed or is the equivalent to a listed impairment, the Commissioner must find the claimant disabled without consideration of the facts. 20 C.F.R. §404.1520(d). Fourth, if the impairment is not listed, the Commissioner must consider whether the claimant has sufficient residual functional capacity to perform his past work. 20 C.F.R. §404.1520(a)(4)(iv). Residual functional capacity is defined as what the claimant "can still do despite [his] limitations." 20 C.F.R. §404.1520(a)(1). If claimant has the residual functional capacity to meet the physical and mental demands of his past work, the Commissioner must find him not disabled. 20 C.F.R. §404.1520(f). Finally, if the claimant cannot perform any past relevant work, the Commissioner must determine, on the basis of the claimant's age, education, work experience, and residual functional capacity, whether he can perform any other work. 20 C.F.R. §404.1520(a)(4)(v). If he cannot, the Commissioner will find him disabled. 20 C.F.R. §404.1520(g).

The claimant bears the initial burden of proving his impairment prevents him from returning to past relevant work. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000). If the claimant satisfies the first four steps, then the burden shifts to the Commissioner to prove the existence of work in significant numbers in the national economy that the claimant could perform. ( Id.)

**C. Scope of Review**

A reviewing court must uphold the Commissioner's factual findings if they are supported by substantial evidence. 42 U.S.C. § § 405(g), 1383 (c)(3); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). Substantial evidence means "more than a mere scintilla." Richard v. Perales, 402 U.S. 389, 401 (1971); (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) ("It means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."); Perales, 402 U.S. at 401 (quoting Consol. Edison, 305 U.S. at 299). However, substantial evidence "does not mean a large or considerable amount of evidence…" Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence may be "less than a preponderance." Stunkard v Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988). Some types of evidence will not be "substantial." For example:

[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence -particularly certain types of evidence (e.g., that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health and Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983); (quoting Kent v. Schweiker, 710 F.2d 110, 114. (3d Cir. 1983)).

"The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner." Claussen v. Chater, 950 F. Supp. 1287, 1292 (D.N.J. 1996) (citing Stewart v. Sec'y of Health, Educ. & Welfare, 714 F.2d 387, 290 (3d. Cir. 1983)). The standard avoids "deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence." Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). "The inquiry is not whether the reviewing court would have made the same determination, but, rather, whether the Commissioner's conclusion was reasonable." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988)). Therefore, a court may not "set the Commissioner's decision aside if it is supported by substantial evidence, even if [the reviewing court] would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

The reviewing court has a duty to review the evidence in its totality.  Daring v. Heckler, 727 F.2d 67, 70 (3d. Cir. 1984).  In order to do so, "a court must 'take into account whatever in the record fairly detracts from its weight.'"  Schonewolf, 972 F. Supp. at 284; (quoting Willibanks v. Sec'y of Health & Human Services., 847 F.2d 301, 303 (6th Cir. 1988)).  The Commissioner has a corresponding duty to facilitate the Court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence."  Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581, 584-86 (3d. Cir. 1986)).  As the Third Circuit has held, access to the Commissioner's reasoning is essential to a meaningful court review:

> [U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision it supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977).  Nevertheless, the court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

### III. ANALYSIS

Plaintiff makes six arguments in support of his position that the Commissioner's decision is not supported by substantial evidence.  First, Plaintiff contends that the Commissioner improperly evaluated the medical evidence.  (Pl. Br. 13).  Second, Plaintiff argues that his

9

statutory right to counsel as a claimant was not properly explained. (Pl. Br. 19). Third, Plaintiff contends that the ALJ failed to obtain proper waiver of right to counsel from Plaintiff. (Pl. Br. 20). Fourth, Plaintiff argues that the ALJ failed to exercise the heightened duty to develop the record required when a claimant is not represented by counsel. (Pl. Br. 22). Fifth, Plaintiff contends that the ALJ wrongly evaluated the medical evidence that meets a listed impairment of Appendix I. (Pl. Br. 24). Lastly, Plaintiff argues that the Commissioner erred as a matter of law in finding that Plaintiff can perform the full range of sedentary work. (Pl. Br. 28). The Court will address each of Plaintiff's arguments in turn.[6]

### A. Evaluation of the Medical Evidence

Plaintiff contends that the ALJ failed to give proper credence to his orthopedic, cardiac, diabetic, and mental health complaints. (Pl. Br. 13). In support of this argument, Plaintiff cites to Smith v. Califano, 637 F.2d 969 (3d. Cir. 1981), where the Third Circuit found the decision of the ALJ to lack corroborating medical testimony or to properly rebut a plaintiff's expert testimony. (Id. 971-972). However, the facts in Smith are easily distinguished from the case at hand.

Here, Dr. Myers indicated that Plaintiff has a permanent orthopedic disability of thirty percent. Dr. Maletsky indicated that he did not believe there was evidence of any residual permanent disability. (R. 177, 179). Dr. Maletsky further noted that he was not convinced that Plaintiff's subjective belief of orthopedic pain matched his medical findings. (R. 177). Dr. Maletsky succinctly opined that he believed that Plaintiff to be capable of employment. (Id.)

---

[6] Because Plaintiff received a partial judgment in his favor on his disability claim, he is only seeking review of the ALJ's findings that he was not disabled prior to his fiftieth birthday, or before September 15, 2003. Plaintiff contends that his disability dates back to April 14, 2000.

With respect to Plaintiff's cardiac complaints, nothing in the record indicates that any doctor concluded that Plaintiff was permanently and totally disabled. (R. 1-290). On April 16, 2001, Dr. Hiremath gave a prognosis that Plaintiff had a "normal chest." (R. 192). Dr. Arnouk noted that Plaintiff was stable, and that it was difficult for even a medical doctor to evaluate the reliability of Plaintiff's complaint. (R. 216). Dr. Argarwal noted that Plaintiff's cardiovascular treatments brought "excellent results." (R. 249). There is insufficient expert testimony on Plaintiff's diabetic or mental health to indicate that either of these have left him permanently disabled. As such, upon consideration of the entire record, there is certainly not unrebutted expert testimony indicating Plaintiff's medical condition is permanently or totally disabling.

The findings on which the ALJ relied before determining Plaintiff's ailments were not disabling prior to his fiftieth birthday are sufficient to support his conclusion. The ALJ comprehensively reviewed each doctor's findings as to Plaintiff's medical complaints, and Plaintiff's own subjective complaints. The Court notes that it is not disputed that Plaintiff felt discomfort prior to September 25, 2003; however, based on the thorough review of Plaintiff's medical history and the ALJ's discretion in making credibility assessments that are supported by the record, the ALJ's determination is not "purely speculative" as Plaintiff contends. (Pl. Br. 18). Rather, his conclusion is sufficiently grounded in the medical records and opinions of Plaintiff's doctors.

**B. Right to Counsel, Waiver of Right to Counsel, and Heightened Duty to Develop the Record**

Plaintiff contends that he was not properly informed of his right to counsel and that the ALJ did not obtain a proper waiver of the right to counsel from Plaintiff. However, Plaintiff's

11

counsel fails to provide any binding authority enforcing either of these claims, nor does the record back this assertion. The Commissioner correctly notes that Plaintiff was notified in writing prior to his hearing that he could "choose to be represented by a lawyer or other person." (R. 68). Also, Plaintiff was reminded of this right to choose a representative on January 23, 2003. (R. 72). A review of the transcript indicates that the ALJ was thorough in making sure that Plaintiff's representative was familiar with the proceedings, while also showing patience with the language barrier and possible problems with interpretation. (R. 26-27, 32-33).

Plaintiff also contends that the ALJ had a heightened duty to develop the record because Plaintiff was not represented by counsel. Like the other claims relating to representation, *supra*, the Court finds Plaintiff's arguments unpersuasive and notes that the record does not appear inadequately developed.

**C. Evaluation of the Medical Evidence as a Listed Impairment of Appendix I**

Plaintiff contends that the ALJ erred in determining he did not meet a listed impairment in Appendix 1 of 20 C.F.R Section 404.920(d), the third step that an ALJ must assess when considering a disability. The Court disagrees with Plaintiff's contentions.

Plaintiff's argument that his orthopedic ailments meet the disability requirements under Listing 1.07 is without merit and ignores the medical conclusions of the doctors who saw Plaintiff. For instance, Dr. Maletsky, noted that Plaintiff " is capable of employment." (R. 177). Dr. Maletsky further noted that he did not believe that there was evidence of any residual permanent disability as a result of this accident. As such, the Court finds that the ALJ's findings were consistent with the medical experts' opinions.

Plaintiff also contends that he meets the qualifications for disability under Listing 4.04 for

cardiac conditions and the ALJ merely made a "conclusory" statement refuting this fact. (Pl. Br. 24). The Court disagrees. It is clear that the ALJ laboriously considered Plaintiff's limitations with regard to the third step of the sequential evaluation process. (R. 17-19). It is not contested that Plaintiff suffers from coronary artery disease. (Def. Br. 17). However, after reviewing the findings of each medical doctor and assessing the credibility of all parties involved, the ALJ found that Plaintiff, despite this disease, "has retained the residual function capacity to perform sedentary work and that he has possessed, at most, occasional postural limitations since his alleged onset date." (R. 19). The ALJ's finding is supported by the medical record.

Finally, Plaintiff contends that even if his ailments do not individually meet a listed impairment, taken as a whole, "a medical equivalence determination may be appropriate." (Pl. Br. 27). However, Plaintiff fails to cite any binding or recent authority to support the argument that the ALJ's decision not to evaluate Plaintiff's ailments as a whole was reversible error. As such, the Court finds Plaintiff's argument without merit.

**D. Performance of Sedentary Work**

Lastly, Plaintiff contends that the ALJ was "conclusory" in his findings that Plaintiff retains the residual functional capacity to perform sedentary work. Counsel contends that Plaintiff's mental impairments make Plaintiff less than sedentary. (Pl. Br. 28). However, this is merely substituting counsel's opinion (with no citations for support) for the opinion of the ALJ that is backed by the record. There is nothing in the record to indicate that Plaintiff's mental impairment precludes him from sedentary work. (R. 1-290).

Plaintiff contention that his age was "borderline" of fifty years old years prior to Plaintiff's fiftieth birthday is inconsistent with the case law cited. Plaintiff cites no case where a

13

period longer than 3.5 months is deemed borderline. (Pl. Br. 28). The ALJ's lack of consideration of a borderline age factor is not a failure and will not be second-guessed by this Court. "The inquiry is not whether the reviewing court would have made the same determination, but, rather, whether the Commissioner's conclusion was reasonable." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997); (citing Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988)). It is reasonable that the ALJ found that because Plaintiff was years shy of his fiftieth birthday, he should not be evaluated, or even considered, as a 50-year-old. Plaintiff was afforded the benefits of a 50-year-old by the ALJ when he reached age fifty and received a favorable ruling from the ALJ in that regard. Once again, Plaintiff relies on Smith v. Califano, but this case has already been distinguished, *supra*, and the analogy is inappropriate.

## IV. CONCLUSION

For the reasons stated above, this Court affirms the Commissioner's determination that the Plaintiff was not disabled before his fiftieth birthday. An appropriate Order accompanies this Opinion.

Date:  June 23, 2006
Orig:  Clerk's Office
cc:    All parties
       File

S/ Dennis M. Cavanaugh
DENNIS M. CAVANAUGH, U.S.D.J.